PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-15750

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 25, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00165-CR-T-24-MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARIN UNDERWOOD,
a.k.a. Buck,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 25, 2006)**

Before EDMONDSON, Chief Judge, ANDERSON and FAY, Circuit Judges.

ANDERSON, Circuit Judge:

The defendant, Darin Underwood ("Underwood"), appeals his 135-month

sentence for possession with intent to distribute 50 grams or more of cocaine, in

violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). Underwood argues that 21 U.S.C. § 841 is unconstitutional in light of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), and that under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), his sentence must be vacated and remanded because the district court committed plain error by sentencing him under a mandatory United States Sentencing Guidelines ("Guidelines") scheme. Additionally, Underwood argues that conversations his brother Darryl had with a confidential informant, offered at trial as statements of a co-conspirator, constituted inadmissible hearsay, the admission of which violated the Confrontation Clause of the Sixth Amendment and the requirements of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004).

After considering each of the defendant's arguments, we affirm his conviction and 135-month sentence.


## I. FACTUAL AND PROCEDURAL HISTORY

In November of 2002, the Drug Enforcement Administration ("DEA") began investigating Underwood and his brother Darryl ("Darryl") for drug trafficking. As part of its investigation, the DEA used a confidential informant named Victoria Hopps ("Hopps"). On November 4th, Hopps contacted Darryl by phone, and later in person, and asked to buy three ounces of cocaine base. Darryl replied that he

"didn't know nothing about all that" but that his brother, the defendant, would know everything that Hopps was asking about. Darryl directed Hopps to a location where she could find Underwood. During their face-to-face meeting, Underwood promised that he would get some cocaine to sell to Hopps.

On November 12, 2002, Underwood contacted Hopps about the cocaine, saying he had acquired some and was ready to sell. On the 15th, Darryl drove Underwood to the location of a pre-arranged meeting and dropped him off. At the meeting, Hopps purchased 51.2 grams of cocaine base from Underwood. While the transaction was occurring, law enforcement agents conducting surveillance observed Darryl parked in his car nearby. After the sale had been made, Underwood returned to Darryl's car for a moment, and then Darryl drove off.

On November 18, 2002, Hopps was unable to reach Underwood directly, and instead contacted Darryl to arrange another meeting to purchase drugs. Later that day, Hopps met with Underwood and purchased 80.3 grams of cocaine base. After that transaction was completed, Underwood was driven away by Darryl in Darryl's car.

On January 13, 2003, Hopps met with Underwood for the last time, inquiring once again about purchasing cocaine base. Underwood explained that there were problems with another deal in which he was involved and he would likely not be

3

able to supply any more cocaine. Hopps later met with Darryl, who corroborated Underwood's earlier statement that he would no longer be able to provide cocaine. In April of 2004, the DEA arrested Underwood. He was indicted on two counts of distributing, and possessing with intent to distribute 50 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). At trial the jury found the defendant guilty of both counts, and he was sentenced to 135 months in prison.

## II. DISCUSSION

A. <u>Booker Error.</u>

On appeal, Underwood argues for the first time that, in light of <u>Booker</u>, the Guidelines are unconstitutional and his case should be vacated and remanded because the district court applied the Guidelines in a mandatory fashion. When a defendant fails to raise an objection in the district court on the basis of <u>Booker</u>, we review for plain error. <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1298 (11th Cir. 2005), <u>cert. denied</u>, 125 S.Ct. 2935. Under plain error review, there must be (1) an error, (2) that is plain, and (3) affects the defendant's substantial rights. <u>Id.</u> When these three factors are met, we may then exercise our discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings. <u>Id.</u>

4

On appeal, Underwood maintains that he has met all four prongs under plain error review. First, he argues that the district court erred by sentencing him under the mandatory Guidelines system and that the error was plain at the time of appellate consideration. Next, he claims that because the court sentenced him to the lowest possible sentence under the Guidelines, there is an indication that, had the court sentenced Underwood through an advisory Guidelines scheme, his sentence would have been different. Finally, Underwood argues that under an advisory scheme, the court would have been able to consider the mitigating factors set forth in 18 U.S.C. § 3553, which might have resulted in him receiving a lesser sentence.

Both Underwood and the government correctly concede that the first and second prongs of the plain error test are easily satisfied. The district court erred when it sentenced Underwood because it considered the Guidelines to be mandatory, and even though the error was not plain at the time of sentencing, the subsequent issuance of <u>Booker</u> establishes that the error is plain at the time of appellate consideration. <u>See</u> <u>United States v. Shelton</u>, 400 F.3d 1325, 1331 (11th Cir. 2005); <u>Rodriguez</u>, 398 F.3d at 1299. <u>See also</u> <u>Johnson v. United States</u>, 520 U.S. 461, 468, 117 S.Ct. 1544 (1997) ("[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal–it is enough that the

5

error be 'plain' at the time of appellate consideration.").  The question is whether the court's error affected Underwood's substantial rights.

In applying the third prong of the plain error test, the burden is on Underwood to demonstrate that the plain error "affects [his] substantial rights." Rodriguez, 398 F.3d at 1300.  We must ask "whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case."  Id. at 1301.  As we explained in Rodriguez, however:

> [W]here the effect of an error on the result in the district court is uncertain or indeterminate–where we would have to speculate–the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error; he has not met his burden of showing prejudice; he has not met his burden of showing that his substantial rights have been affected.

Id. at 1301 (citing Jones v. United States, 527 U.S. 373, 394-95, 119 S.Ct. 2090, 2105 (1999)).

The defendant's burden has been satisfied in past cases by presenting evidence indicating that the district court was frustrated with the severity of the Guidelines and sought to find a way to have a lower sentence imposed, United States v. Martinez, 407 F.3d 1170, 1173-74 (11th Cir. 2005).  A sentence that is at the low end of the Guideline range, however, is not in and of itself sufficient to satisfy the third-prong burden.  See United States v. Fields, 408 F.3d 1356, 1360-

6

61 (11th Cir. 2005) (applying plain error review in holding that the fact that the defendant was sentenced to the bottom of the mandatory Guidelines range, without more, is insufficient to satisfy the third prong's requirement that the defendant show a reasonable probability of a lesser sentence under an advisory guideline system), petition for cert. filed, No. 05-5157 (U.S. June 29, 2005).

The record indicates no frustration on the part of the district court with the severity of the Guidelines sentence, nor did the district court indicate a desire to impose a lesser sentence in Underwood's case. As a result, Underwood's argument relies solely on the fact the district court imposed the lowest possible sentence within the Guidelines range. We explained in Fields, however, that this is not sufficient to demonstrate a reasonable probability of a lesser sentence. Accordingly, Underwood has not established that his substantial rights were affected by the district court's Booker error, and thus he is not entitled to relief on this issue. See Rodriguez, 398 F.3d at 1301.

B. Constitutionality of 21 U.S.C. § 841.

Underwood argues for the first time on appeal that 21 U.S.C. § 841 is unconstitutional, in light of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000). Underwood claims that if the drug quantities in 21 U.S.C. § 841 are sentencing factors and not elements of the offense, as this court has previously

held, then the statute is unconstitutional. He reasons that, because district courts have historically determined facts underlying the sentencing factors in 21 U.S.C. § 841(b), and Apprendi requires a jury, not a judge, to determine facts that increase the penalty for a crime beyond the statutory maximum, § 841 does not conform with Apprendi and is therefore unconstitutional. When a defendant fails to raise an Apprendi constitutional error in the district court, we review for plain error, United States v. Hester, 287 F.3d 1355, 1357 (2000), the requirements of which have been outlined above.

In United States v. Sanchez, 269 F.3d 1250 (11th Cir. 2001) (en banc) we held that Apprendi only implicated § 841 where a judge-found drug quantity increased a defendant's sentence beyond the statutory maximum. Sanchez, 269 F.3d at 1268. In cases where a "defendant's actual sentence falls within the range prescribed by the statute for the crime of conviction" there is no Apprendi constitutional error. Id. (emphasis omitted). Following the reasoning set forth in Sanchez, we later held that where a defendant "cannot demonstrate that no set of circumstances exist under which the [statute] would be valid," a statute is not unconstitutional. United States v. Tinoco, 304 F.3d 1088, 1101 (11th Cir. 2002) (holding that 46 U.S.C. app. § 1903, as incorporating 21 U.S.C. § 960, is not unconstitutional under Apprendi because in most sentencing scenarios "the

8

sentence actually imposed will fall below the prescribed statutory maximum.")

(quotation omitted).

Under our precedent, therefore, an <u>Apprendi</u> constitutional error occurs *only*

where a defendant is sentenced beyond the statutory maximum for the offense.

<u>Sanchez</u>, 269 F.3d at 1268-69; <u>Tinoco</u>, 304 F.3d at 1101. Though <u>Sanchez</u>

involved the application of § 841(b)(1)(C) and <u>Tinoco</u> the application of § 960(b),

we hold that the principle underlying the holdings of those cases applies with

equal force to § 841(b)(1)(A)(iii), which is at issue in this case. The maximum term

of imprisonment under 21 U.S.C. § 841(b)(1)(A)(iii) is life imprisonment.

Underwood was sentenced to 135 months in prison, well below the statutory

maximum. In a § 841 case where the defendant's ultimate sentence falls at or

below the statutory maximum penalty in § 841(b)(1)(A)(iii), there is no <u>Apprendi</u>

error. Underwood has failed to demonstrate that the district court committed plain

error, and is therefore not entitled to relief.

C. <u>The Statements from Underwood's Brother.</u>

At trial, the government sought to introduce and publish to the jury CD's of

recorded conversations between Underwood's brother, Darryl, and Hopps, the

confidential informant. The CD's contained conversations clearly implicating

Underwood in criminal activity. The defense objected to the introduction of the

CD's, claiming both that Darryl was not a co-conspirator in the case, and that the admission of the CD's was barred under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004).

We review questions of constitutional law de novo. United States v. Brown, 364 F.3d 1266, 1268 (11th Cir. 2004). Determinations of the admissibility of evidence are in the discretion of the trial judge and will not be reversed by an appellate court unless it finds an abuse of discretion. United States v. Myles, 290 F.3d 1341, 1351 (11th Cir. 2002).

At trial, Underwood argued both that Darryl was not a co-conspirator and that because Hopps was working "under the auspices of law enforcement" as a confidential informant, the conversations between Hopps and Darryl were not merely "non-formal statements made by individuals to acquaintances," but rather analogous to conversations covered by Crawford. The district judge overruled the defense objection, finding that Darryl did qualify as a co-conspirator and that Crawford did not bar admission of the evidence: "And I think clearly based on what I've heard so far, the brother [Darryl] was involved as a co-conspirator in this case. But Crawford seems to apply to out-of-court statements by witnesses that are testimonial, and this is not testimonial ... [i]t doesn't seem that Crawford – the Crawford case would prohibit the introduction of these CD's." Underwood appeals

10

both rulings by the district court.

We turn first to the argument that the brother was not a co-conspirator. Defendant correctly asserts that in order to introduce statements of the co-conspirator under Fed.R.Evid. 801(d)(2)(E), the government must prove by a preponderance of the evidence that (1) a conspiracy existed, (2) the conspiracy included the declarant and the defendant against whom the statement is offered, and (3) the statement was made during the course of and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778 (1978). The government produced CD's with recorded conversations between Darryl and the confidential informant and introduced testimony of agents who observed Darryl driving to and from drug transactions with Underwood. Darryl communicated on Underwood's behalf while the negotiations for the drug deals were taking place, and helped set up meetings between Underwood and Hopps at which the drugs were to be sold. We readily conclude that the government provided ample evidence that Darryl was involved in selling drugs with Underwood, and satisfied the three requirements for introducing statements of a co-conspirator.

Nevertheless, Underwood argues that the statements contained on the CD's should not have been admitted at trial because they were "testimonial" statements

11

under the meaning of the Sixth Amendment and therefore barred under the holding of Crawford. In Crawford, the Supreme Court held that a Washington state court had committed error when it admitted at trial the tape recorded statement of the defendant's wife, made to police, during the police interrogation of her. The interrogation concerned the involvement of the defendant and his wife in the stabbing of a man who had previously tried to rape the wife. The wife was unavailable to testify at defendant's trial because of the spousal privilege. The Court reasoned that the statement to police had been testimonial, and that because the defendant had never had the opportunity to cross-examine his wife about the statement, admitting the statement at trial violated his constitutional rights under the Confrontation Clause.[1] Crawford, 541 U.S. at 68, 124 S.Ct. at 1374. In Crawford, the Court abrogated Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 25, 31 (1980), and changed the legal landscape with respect to prior testimonial statements, holding: "[w]here testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford, 541 U.S. at 68, 124 S.Ct. at 1374. However, Crawford did not alter the law with respect to non-testimonial hearsay.

---

[1]     The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with witnesses against him." U.S. Const. Amend. VI."

12

Id. ("Where non-testimonial hearsay is at issue, it is wholly consistent with the framers' design to afford the States flexibility in their development of hearsay law – as does Roberts." ).

Having already concluded that the challenged evidence in this case satisfies the requirements for introducing statements of a co-conspirator, Underwood's only remaining challenge to the admission of the CD's is whether or not the challenged evidence was "testimonial." The Court noted that the Confrontation Clause applies to "witnesses" who bear testimony, which the Court indicated is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact. Id. at 51, 124 S.Ct. at 1364. The Court in Crawford declined to spell out a comprehensive definition of "testimonial." However, the Court did describe the minimum coverage of "testimonial" status, holding that: "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury or at a former trial; and to police interrogations." Id. at 68, 124 S.Ct. at 1374. Without adopting a particular formulation of the core class of "testimonial" statements, the Court did mention three: (1) "ex parte in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially" 541 U.S. at 51, 124

13

S.Ct. at 1364; (2) "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions" id.; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. As the Second Circuit has noted, all of these formulations involve statements made under circumstances which would lead the declarant to believe that the statement would be available for use at a later trial. United States v. Saget, 377 F.3d 223, 229 (2nd Cir. 2004).

In this case, the challenged evidence consisted of recorded conversations between the confidential informant and Darryl in which arrangements were made for the confidential informant to purchase cocaine. This evidence is neither testimony at a preliminary hearing, nor testimony before a grand jury, nor testimony at a former trial, nor a statement made during a police interrogation. Moreover, the challenged evidence does not fall within any of the formulations which Crawford suggested as potential candidates for "testimonial" status. Crawford, 541 U.S. at 51, 124 S.Ct. at 1364. Darryl, the declarant in the challenged evidence, made statements to Hopps in furtherance of the criminal conspiracy. His statements clearly were not made under circumstances which would have led him reasonably to believe that his statement would be available for

14

use at a later trial. Had Darryl known that Hopps was a confidential informant, it is clear that he never would have spoken to her in the first place.

Although the foregoing discussion would probably support a holding that the evidence challenged here is not "testimonial," two additional aspects of the Crawford opinion seal our conclusion that Darryl's statements to the government informant were not "testimonial" evidence. First, the Court stated: "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial – for example, business records or statements in furtherance of a conspiracy." Id. at 55, 124 S.Ct. at 1367. Also, the Court cited Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775 (1987), approvingly, indicating that it "hew[ed] closely to the traditional line" of cases that Crawford deemed to reflect the correct view of the Confrontation Clause. Crawford, 541 U.S. at 58, 124 S.Ct. at 1368. In approving Bourjaily, the Crawford opinion expressly noted that it involved statements unwittingly made to an FBI informant. Id. Bourjaily held that a co-conspirator's unwitting statements to an FBI informant were properly admitted at trial against the defendant, despite the fact that the defendant had not had a prior opportunity for cross-examination and the declarant was not available at trial. The co-conspirator statement in Bourjaily is indistinguishable from the challenged evidence in the instant case.

15

For the foregoing reasons, we conclude that the challenged evidence in this case was not "testimonial,"[2] and that it satisfied the requirements for the admission into evidence of co-conspirator statements. Accordingly, the district court did not err in admitting the evidence.

## III. CONCLUSION

After consideration of each of the defendant's arguments, we conclude that the judgment of the district court is

AFFIRMED.

---

[2] Our holding is consistent with that of every other circuit court of appeals to have addressed the issue in an analogous context. United States v. Delgado, 401 F.3d 290 (5th Cir. 2005) (involving statements admissible as statements of a co-conspirator); United States v. Hendricks, 395 F.3d 173 (3rd Cir. 2005) (involving, *inter alia*, co-conspirator statements); United States v. Saget, 377 F.3d 223 (2nd Cir. 2004) (involving statements of a co-conspirator admitted as statements against interest); United States v. Reyes, 362 F.3d 536 (8th Cir. 2004) (involving statements admissible as statements of a co-conspirator).