[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15771
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 15, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cr-00351-JEC-JFK-4

UNITED STATES OF AMERICA,

                                                          Plaintiff-Appellee,

versus

CHIDEBE ORIZU,
a.k.a. Captain,

                                                          Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 15, 2011)

Before BARKETT, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Chidebe Orizu appeals his conviction and sentence for conspiracy to commit money laundering, 18 U.S.C. § 1956(h). Orizu argues that the district court erred by refusing to allow him to cross-examine a government witness, Raymond Nsoedo, concerning out-of-court statements that Nsoedo had made exculpating Orizu. Orizu also contends that the district court erred in imposing a six-level sentencing enhancement under U.S.S.G. § 2S1.1(b) because there was insufficient evidence to prove that he knew that the laundered funds were the proceeds of drug trafficking. For the reasons stated below, we affirm.

I.

Orizu was charged in a second superseding indictment with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Nsoedo, a cooperating codefendant, was a key witness at Orizu's trial. Nsoedo testified that he met Orizu at a social event for Nigerians living in Atlanta. The two men discovered that their families were from the same village in Nigeria, and they soon became close friends. At the time, Nsoedo was working as a taxi driver. In 1992, Nsoedo began to transport heroin in order to supplement his income. A few years later, Nsoedo located his own source of heroin and set up a distribution network in Detroit, Michigan. Chikaodinaka Ahanonu was Nsoedo's chief lieutenant and was responsible for selling Nsoedo's heroin in the Detroit area.

2

Nsoedo explained that he used some of his drug proceeds to purchase vehicles. He set up a company, Atlantic Imports, that bought cars at auctions in the Atlanta area. Orizu also owned a vehicle-buying business, Valu-Auto, and on various occasions, Orizu purchased vehicles for Nsoedo using Valu-Auto's line of credit. Nsoedo would then repay Orizu with proceeds from the sale of heroin. Orizu also sold vehicles to Ahanonu, with Nsoedo acting as an intermediary. Nsoedo and Ahanonu paid for the vehicles using cash and money orders. Orizu also assisted Nsoedo and Ahanonu through informal money transfers. He would accept U.S. currency from them and would deposit an equivalent amount of currency in accounts in Nigeria.

On one occasion, Ahanonu's assistant, Uchenna Obi, was stopped by the police while trying to deliver a bag of currency to Orizu's office. Orizu drove by the scene to find out what was happening. Orizu called Nsoedo and told him that the police were searching Obi's vehicle. He also remarked that Nsoedo needed to tell Ahanonu "to look for something else more pertinent to do to earn a living."

On cross-examination, Nsoedo acknowledged that he kept his drug trafficking activities a secret from everyone, including Orizu. Once, when Orizu asked where Nsoedo had received a money order, Nsoedo lied that he had obtained the money from friends. Nsoedo also conceded that he expected to

3

receive a sentence reduction in exchange for his testimony. Defense counsel then sought to question Nsoedo concerning some letters that Nsoedo had written to Orizu following his arrest. In the letters, Nsoedo declared that Orizu was innocent and that Orizu had no knowledge of Nsoedo's drug trafficking activities. The letters also discussed Nsoedo's Sentencing Guidelines calculations and how his plea agreement would affect his sentence. The government objected to any cross-examination concerning the letters.

The district court ruled that Nsoedo's letters were inadmissible hearsay. The court pointed out that the letters could not come in as prior inconsistent statements because they were consistent with Nsoedo's testimony on cross-examination that Orizu had no knowledge of Nsoedo's drug activities. The district court further observed that the defense could not introduce the letters as prior consistent statements unless the government were to impeach the relevant portions of Nsoedo's testimony. Defense counsel objected that the exclusion of any cross-examination concerning the letters violated Orizu's Sixth Amendment right to confrontation and his Fifth Amendment right to due process.

Officer Trevor Primo of the Roswell, Georgia, Police Department testified that he interviewed Orizu following his arrest. Orizu acknowledged that he had provided currency exchange services for individuals who wanted to send money to

4

Nigeria. He also admitted that he had conducted vehicle transactions with Nsoedo. When Officer Primo asked about Nsoedo's involvement with drugs, Orizu responded that Nsoedo "was a cousin, family, and that he could not tell on family." Orizu explained that he had told Nsoedo that he needed to stop what he was doing. He conceded that he knew when someone was doing something wrong and when their money was not "straight." Orizu admitted that he never asked about Nsoedo's activities because that would have made him involved. The government also introduced evidence that Orizu knew that he was required to report cash transactions worth over $10,000 to the Internal Revenue Service, but had failed to report any of his transactions with Nsoedo or Ahanonu. The jury convicted Orizu of conspiracy to commit money laundering.

The presentence investigation report ("PSI") determined that Orizu had a base offense level of 22 under U.S.S.G. § 2S1.1(a)(2). The PSI added six levels under § 2S1.1(b)(1) because Orizu knew or believed that the laundered funds were the proceeds of, or were intended to promote, a controlled substance offense. After imposing additional enhancements, the PSI arrived at a total offense level of 32, a criminal history category of I, and a guideline range of 121 to 151 months' imprisonment.

Orizu objected to the six-level enhancement under § 2S1.1(b)(1). He argued that there was insufficient evidence to show that he knew the laundered funds to be the proceeds of drug trafficking. He pointed to Nsoedo's testimony that Nsoedo had kept his drug trafficking activities a secret. He observed that the amount of money involved was not so large as to suggest that drugs were involved. He asserted that the funds could have been derived from other forms of illegal activity, such as fraud.

The district court overruled Orizu's objection to the § 2S1.1(b)(1) enhancement. The district court observed that Orizu "is an intelligent man and I think any intelligent person under these circumstances would have deduced what was going on." The court noted that Orizu dealt mostly with small amounts of cash and money orders, which suggested that the funds were derived from drug trafficking rather than from a fraud scheme. The district court also cited the "coded nature" of the conversations between Orizu and Nsoedo and the fact that Orizu became personally involved when Obi's vehicle was stopped in Atlanta. Although it was possible that Nsoedo never directly told Orizu about the heroin, the court observed, it was "just common sense . . . that he would have known that what was going on here was drug dealing and that is what the proceeds were."

6

After the district court overruled Orizu's objection, it granted a downward variance and sentenced Orizu to a term of 72 months' imprisonment.

## II.

Orizu raises two arguments with respect to Nsoedo's letters. First, he asserts that he should have been permitted to ask Nsoedo whether he was willing to adopt the letters. Because Orizu did not raise that argument below, we are reviewing it for plain error. *See United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005) ("[W]hen a party raises a claim of evidentiary error for the first time on appeal, we review it for plain error only."). Under the plain error standard, a defendant must establish (1) error, (2) that is plain, and (3) that affects his substantial rights. *Id.* at 1202-03. An error affects a defendant's substantial rights if there is a reasonable probability that it altered the outcome of the case. *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005). If the defendant can satisfy the first three prongs of the plain error standard, we may exercise our discretion to correct an error that "seriously affects the fairness integrity, or public reputation of judicial proceedings." *Baker,* 432 F.3d at 1203 (quotation omitted). Orizu's second argument is that the district court's ruling violated his right to due process because the letters were essential to his defense and were accompanied by adequate assurances of reliability. Because Orizu raised that argument below, we

7

are reviewing it *de novo*. *See United States v. Underwood*, 446 F.3d 1340, 1345 (11th Cir. 2006) (noting that we review questions of constitutional law *de novo*).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed.R.Evid. 801(c). A prior consistent statement by a witness is not considered to be hearsay if it "is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Fed.R.Evid. 801(d)(1). In addition, the Advisory Committee notes to Rule 801 explain that a witness's out-of-court statement is not hearsay if the witness adopts the statement during his testimony. *See* Fed.R.Evid. 801 Advisory Committee Notes, Note to Subdivision (d) ("If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem.").

The Supreme Court has explained that evidentiary rulings can violate due process if they have the effect of depriving the defendant of a fair trial. *Chambers v. Mississippi*, 410 U.S. 284, 302-03, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). In *Chambers*, a defendant who was charged with murder sought to prove that another individual, McDonald, had confessed to the murder. *Id.* at 287-91; 93 S.Ct. at 1041-44. The trial court, however, excluded both McDonald's written confession and a series of witnesses to whom McDonald had confessed. *Id.* at

8

291-94, 93 S.Ct. at 1044-45. The Supreme Court concluded that the cumulative effect of those evidentiary rulings violated Chambers' right to due process. *Id.* at 302-03, 93 S.Ct. at 1049. The Court observed that due process requires that a defendant be given "a fair opportunity to defend against the State's accusations" by cross-examining adverse witnesses and by calling witnesses on his own behalf. *Id.* at 294, 93 S.Ct. at 1045. Because the trial court had prevented Chambers from presenting evidence that was both reliable and critical to his defense, the Supreme Court determined that Chambers was entitled to a new trial. *Id.* at 302-03, 93 S.Ct. at 1049.

In this case, Orizu never asked to show the letters to Nsoedo to see if Nsoedo was willing to adopt them. Therefore, the district court did not plainly err by not giving him an opportunity to do so. Even if Orizu were able to satisfy the first two prongs of plain error review, he cannot show that the exclusion of the letters violated his substantial rights. In the letters, Nsoedo described his reasons for cooperating with the government, and he also explained that Orizu had no knowledge of his drug trafficking activities. This was consistent with Nsoedo's testimony on cross-examination. Because the letters simply corroborated Nsoedo's testimony, which the government did not impeach, there is no reasonable probability that the outcome of the case would have been different if

9

the district court had allowed Orizu to cross-examine Nsoedo about the letters. *See Rodriguez*, 398 F.3d at 1299. Thus, Orizu has not established plain error with respect to his adoption argument.

Orizu's due process claim fails for similar reasons. Because the letters merely corroborated Nsoedo's trial testimony, they were not crucial to Orizu's defense. Therefore, the exclusion of the letters did not rise to the level of a due process violation. *See Chambers*, 410 U.S. at 302-03, 93 S.Ct. at 1049.

III.

We review the district court's factual findings at sentencing for clear error, and the district court's application of the Sentencing Guidelines to those facts *de novo*. *United States v. Gupta*, 572 F.3d 878, 887 (11th Cir. 2009). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted). Section 2S1.1(b)(1) of the Sentencing Guidelines provides that a defendant's offense level should be increased by six levels if the defendant knew or believed that the laundered funds were the proceeds of, or were intended to promote, a drug trafficking offense. U.S.S.G. § 2S1.1(b)(1).

In this case, the district court did not clearly err by finding that Orizu knew that the laundered funds were the proceeds of drug trafficking. Orizu engaged in a series of secretive deals involving cash and numerous money orders. As the district court observed, currency-based transactions are more suggestive of drug trafficking than of other forms of illegal activity such as fraud. Orizu's knowledge also can be inferred from his relationship with Nsoedo. The two men were close friends, and Nsoedo had been involved in heroin trafficking for many years. Even if Nsoedo never explicitly told Orizu that he was involved with drugs, Orizu's statements to the police suggest that he had some knowledge of Nsoedo's activities. When the police asked Orizu about Nsoedo's involvement in drugs, Orizu responded that Nsoedo was family and that he could not tell on family. Orizu also acknowledged that he knew when someone was doing something wrong and when their money was not "straight." He admitted that he never asked Nsoedo about the source of the money because that would have made him involved. We conclude that the district court properly applied the six-level enhancement under U.S.S.G. § 2S1.1(b)(1).

Accordingly, after review of the record and the parties' briefs, we affirm Orizu's conviction and sentence.

**AFFIRMED.**