[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  12-12223
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cr-00014-JA-TBS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NICHOLAS M. RAGOSTA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 15, 2013)


Before MARTIN, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Nicholas Ragosta appeals his convictions for one count of conspiracy to possess 100 kilograms or more of marijuana with intent to distribute, one count of possession of 100 kilograms or more of marijuana with intent to distribute, and one count of using and carrying a firearm in furtherance of a drug trafficking crime. *See* 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, 18 U.S.C. § 924(c). Mr. Ragosta asserts that the district court erred by admitting hearsay evidence and Rule 404(b) evidence. He also contends, for the first time on appeal, that the government engaged in prosecutorial misconduct.

The government alleged that Mr. Ragosta was involved in a drug heist while he was a deputy with the Marion County Sheriff's Office. His first trial resulted in a hung jury. His second trial resulted in a conviction and a sentence of 180 months' imprisonment based on evidence that Mr. Ragosta successfully conspired with his cousin, Andrew Ragosta, and an acquaintance, Robert Abbott, to steal marijuana from drug dealers. Mr. Ragosta received $30,000 for his participation in the heist, which took place on May 15, 2009.

I

Both co-conspirators testified against Mr. Ragosta. During an intercepted phone conversation on July 6, 2009, which Mr. Ragosta challenges as inadmissible hearsay, Mr. Abbott and Andrew Ragosta discussed the division of proceeds and a demand from Nicholas Ragosta's father (Nicola) that more money be paid to his

2

sons, Nicholas and Johnny. Over a defense objection, the district court allowed the government to play the recording for the jury.

We first address Mr. Ragosta's argument that the district court improperly admitted hearsay evidence under the co-conspirator exception, *see* Fed. R. Evid. 801(d)(2)(E), a ruling we review for abuse of discretion. *See United States v. Underwood*, 446 F.3d 1340, 1345 (11th Cir. 2006). This exception applies if the government shows by a preponderance of the evidence (1) that a conspiracy existed, (2) that the declarant and the defendant were both members of the conspiracy, and (3) that the statement was made during the course of and in furtherance of the conspiracy. *See id.* at 1345–46.

Mr. Ragosta argues that the second and third elements were not met because his father was not a co-conspirator and the conspiracy had ended when the statements were made. The two participants in the phone call (Robert Abbott and Andrew Ragosta) were clearly members of the conspiracy, as Mr. Ragosta readily admits. *See, e.g.*, Ragosta Br. at 17 ("Andrew Ragosta was part of the conspiracy . . . ."). The co-conspirators, however, discussed out-of-court statements by Nicholas Ragosta's father, so there is a hearsay within hearsay issue.

The district court did not specifically address whether the father was a co-conspirator, *see* R:107 at 34, but we can affirm on any ground that finds support in the record. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir.

3

2001). As noted earlier, the statements at issue involved the father's demand that his sons, Nicholas and Johnny Ragosta, receive more money for their roles in the conspiracy. We find no error in the district court's conclusion that the conversation—including the father's statement about the distribution of money—was in furtherance of the conspiracy. *See United States v. Turner*, 871 F.2d 1574, 1581 (11th Cir. 1989) (conversations among co-conspirators about how proceeds of theft were going to be distributed were admissible under Rule 801(d)(2)(E)); *United States v. Knuckles*, 581 F.2d 305, 313 (2d Cir. 1978) ("[I]t is fair to say that where a general objective of the conspirators is money, the conspiracy does not end, of necessity, before the spoils are divided among the miscreants."). We also conclude that the father—given his active interest in obtaining more money for his sons—was a member of the conspiracy at the time he made the statement attributed to him. Accordingly, the intercepted conversation was properly admitted under Rule 801(d)(2)(E).

## II

Next we address Mr. Ragosta's argument that the district court erred by allowing the government to introduce a list of records accessed using Mr. Ragosta's credentials for DAVID—a database used by law enforcement officers to search for individuals' photographs and driver's license information. Mr. Ragosta contends that this evidence was irrelevant and prejudicial, and therefore should not

4

have been admitted under Rule 404(b). He also asserts that the government failed to proffer sufficient proof that he was the person who accessed the records.

We generally review a district court's decision to admit evidence under Rule 404(b) for abuse of discretion. *See United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005). But our review here is only for plain error because Mr. Ragosta failed to renew his objection during trial after initially asserting it in a motion in limine. *See United States v. Brown*, 665 F.3d 1239, 1247 (11th Cir. 2009) (noting that an overruled motion in limine is insufficient to preserve an objection for appeal). Under plain error review, Mr. Ragosta must show (1) that there is error, (2) that the error is plain, (3) that the error affects his substantial rights, and (4) that the error seriously affects the fairness, integrity, or public reputation of the judicial proceeding. *See id.* A district court may admit evidence of other crimes, wrongs, or acts as proof of motive, opportunity, intent, preparation, plan, or other non-character reasons. *See* Fed. R. Evid. 404(b). The three-part test for admissibility is (1) relevance to an issue other than the defendant's character, (2) sufficient evidence that the defendant committed the act, and (3) probative value not substantially outweighed by undue prejudice. *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

The district court did not err in admitting the evidence. Because the DAVID searches involved drug-unit officers or potential drug suppliers, the evidence was

5

relevant to show Mr. Ragosta's intent and preparation for the drug conspiracy. Although there was evidence suggesting that another officer could have conducted the searches, the government's burden for admissibility was preponderance of the evidence. *See id.* ("[T]here must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question."). A reasonable jury could conclude that Mr. Ragosta conducted the DAVID searches given the evidence that each officer had a unique DAVID certificate and Mr. Ragosta's own testimony confirming that he conducted at least some of the searches (although his explanation for why he accessed the records differed from the government's proffered rationale). *See* R:108 at 188–92. Any undue prejudice, moreover, did not substantially outweigh the probative value of the evidence. We find no error, plain or otherwise, in the district court's decision to admit the DAVID evidence under Rule 404(b).

## III

Finally, we address the prosecutorial misconduct claim, which we also review for plain error because Mr. Ragosta raises it for the first time on appeal. *See United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997). Mr. Ragosta alleges that the government "altered its evidence at the second trial to defeat [his] alibis." Ragosta Br. at 20. To state a claim for prosecutorial misconduct based on the use of false testimony, Mr. Ragosta must show (1) that the prosecutor knowingly used

perjured testimony or failed to correct testimony subsequently discovered to be false, and (2) that the falsehood was material. *See United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010).

Mr. Ragosta does not specifically identify what evidence he alleges to have been "altered" by the government. He points to the testimony of Robert Abbott regarding the timing of certain events, but provides no real basis for concluding that his testimony at the second trial contradicted his testimony at the first trial. In fact, Mr. Abbott consistently testified that he was unsure of the exact time he arrived home from the heist. *Compare* R:72 at 101 (testifying at the first trial that he arrived home at "approximately eight something—I can't remember the exact time"), *with* R:107 at 57 (testifying at the second trial that he couldn't recall the exact timeframe he arrived home, but that it was right before dusk).

Mr. Ragosta also claims the government made "inconsistent argument[s]" about the timing of the heist by arguing at the first trial that it could not "pin down" the exact time of the drug heist, but subsequently arguing at the second trial that the heist took place during a specific, narrow timeframe. This argument is contradicted by the record, which indicates that the government argued at both trials that the heist could have occurred at certain different times based on phone records and witness testimony. *Compare* R:75 at 13 (closing argument at first trial, noting that "it could have been in various stages of when these things took place"),

7

*with* R:111 at 14 (closing argument at second trial, noting that "it could have been at several times . . . but let me give you one scenario"). We find no error, much less plain error, where Mr. Ragosta fails to identify any false or perjured testimony to form the basis for his prosecutorial misconduct claim.

   **AFFIRMED.**