[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  12-12223
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cr-00014-JA-TBS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NICHOLAS M. RAGOSTA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 25, 2013)

Before MARTIN, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

We initially issued our unpublished opinion in this case on May 15, 2013. *See United States v. Ragosta*, No. 12-12223, 2013 WL 1979711 (11th Cir. May 15, 2013). The mandate in that case issued as well. Due to an administrative error, however, an opinion containing a prior draft of Section I inadvertently issued. Having discovered this error, we <u>sua sponte</u> recall the mandate, vacate our prior opinion, and issue this opinion in its stead. *See Calderon v. Thompson*, 523 U.S. 538, 549, 118 S. Ct. 1489, 1498 (1998) ("[T]he courts of appeals are recognized to have an inherent power to recall their mandates, subject to review for an abuse of discretion."); *see also* 11th Cir. R. 41-1(b) ("A mandate once issued shall not be recalled except to prevent injustice."). Today's opinion does not change the outcome of Mr. Ragosta's appeal or break new legal ground, and is intended merely to conform the panel's analysis to existing precedent.

Nicholas Ragosta appeals his convictions for one count of conspiracy to possess 100 kilograms or more of marijuana with intent to distribute, one count of possession of 100 kilograms or more of marijuana with intent to distribute, and one count of using and carrying a firearm in furtherance of a drug trafficking crime. *See* 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, 18 U.S.C. § 924(c). Mr. Ragosta asserts that the district court erred by admitting hearsay evidence and Rule 404(b) evidence. He also contends, for the first time on appeal, that the government engaged in prosecutorial misconduct.

2

The government alleged that Mr. Ragosta was involved in a drug heist while he was a deputy with the Marion County Sheriff's Office. His first trial resulted in a hung jury. His second trial resulted in a conviction and a sentence of 180 months' imprisonment based on evidence that Mr. Ragosta successfully conspired with his cousin, Andrew Ragosta, and an acquaintance, Robert Abbott, to steal marijuana from drug dealers. Mr. Ragosta received $30,000 for his participation in the heist, which took place on May 15, 2009.

I

Both co-conspirators testified against Mr. Ragosta. During an intercepted phone conversation on July 6, 2009, which Mr. Ragosta challenges as inadmissible hearsay, Mr. Abbott and Andrew Ragosta discussed the division of proceeds and a demand from Nicholas Ragosta's father (Nicola) that more money be paid to his sons, Nicholas and Johnny. Over a defense objection that the conversation was not admissible under the co-conspirator exception because the objectives of the conspiracy had already been accomplished at the time the conversation occurred, the district court allowed the government to play the recording for the jury.

We first address Mr. Ragosta's argument that the district court improperly admitted hearsay evidence under the co-conspirator exception, *see* Fed. R. Evid. 801(d)(2)(E), a ruling we review for abuse of discretion. *See United States v. Underwood*, 446 F.3d 1340, 1345 (11th Cir. 2006). This exception applies if the

3

government shows by a preponderance of the evidence (1) that a conspiracy existed, (2) that the declarant and the defendant were both members of the conspiracy, and (3) that the statement was made during the course of and in furtherance of the conspiracy. *See id.* at 1345–46.

Mr. Ragosta argues that the third element was not met because the conspiracy had ended when the statements were made. The two participants in the phone call (Robert Abbott and Andrew Ragosta) were clearly members of the conspiracy, as Mr. Ragosta readily admits. *See, e.g.*, Ragosta Br. at 17 ("Andrew Ragosta was part of the conspiracy . . ."). Thus, we find no error in the district court's conclusion that the conversation—which discussed the further division of proceeds among the co-conspirators—was in furtherance of the conspiracy. *See United States v. Turner*, 871 F.2d 1574, 1581 (11th Cir, 1989) (conversations among co-conspirators about how proceeds of theft were going to be distributed were admissible under Rule 801(d)(2)(E)); *United States v. Knuckles*, 581 F.2d 305, 313 (2d Cir. 1978) ("[I]t is fair to say that where a general objective of the conspirators is money, the conspiracy does not end, of necessity, before the spoils are divided among the miscreants."). Accordingly, the intercepted conversation was properly admitted under Rule 801(d)(2)(E).

Mr. Ragosta also now argues that because the topic of the conversation between co-conspirators Abbot and Andrew strayed to Nicola's demand that his

4

sons be paid more money, the conversation contained inadmissible hearsay within hearsay—at least insofar as it relayed Nicola's demand—because Nicola was not himself a co-conspirator. Mr. Ragosta did not raise this objection at trial, and thus we review this claim for plain error only. *United States v. Brown*, 665 F.3d 1239, 1247 (11th Cir. 2011). To meet this burden, Mr. Ragosta must show "(1) there is an error; (2) that is plain or obvious; and (3) affected [his] substantial rights in that it was prejudicial and not harmless." *Id.* at 1247 n.3 (quotation marks and alterations omitted). If these three criteria are met, we may reverse for plain error if "the error seriously affected the fairness, integrity, or public reputation of the district court proceedings." *Id.* Generally, "[w]hen the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006) (quotation marks omitted).

Mr. Ragosta has failed to show that it was plain error to allow testimony regarding Nicola's demand. Even if the demand itself was not admissible under Rule 801(d)(2)(E) because Nicola was not a co-conspirator, it is debatable whether the demand was hearsay to begin with. *See* Fed. R. Evid. 801(c)(2) ("'Hearsay' means a statement that: . . . a party offers in evidence to prove the truth of the matter asserted in the statement."); *see also United States v. Mateos*, 623 F.3d

5

1350, 1364 (11th Cir. 2010) ("If the statement is not hearsay in the first place, there is no need for it to fit within an exception to the rule against hearsay."). Indeed, we have held that a statement intended as an order—such as the one made by Nicola here—is not hearsay within the meaning of Rule 801. *See United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986) (holding that an out-of-court declaration to "bring your supplier" was not hearsay because "[i]t [was] more in the nature of an order or a request and [thus], to a large degree, not even capable of being true or false," and "[was] offered solely for the fact that it was made and the effect it might have had upon its hearer"). Likewise, we have held in similar circumstances that a non-conspirator's recorded statements are not hearsay, and are admissible against a conspirator, where they are offered for the purpose of "mak[ing] understandable to the jury the statements made by [the conspirator]." *United States v. Price*, 792 F.2d 994, 997 (11th Cir. 1986); *see also United States v. Smith*, 918 F.2d 1551, 1559 (11th Cir. 1990) (same).

Thus, because our Circuit law at least contemplates that Nicola's demand was not hearsay, and Mr. Ragosta has failed to produce any Supreme Court or Circuit precedent "directly resolving [the issue]," the district court did not commit plain error in allowing statements regarding Nicola's demand to be introduced here. *Castro*, 455 F.3d at 1253. In any event, admitting Nicola's demand was harmless, particularly in light of the adverse testimony of the other co-conspirators,

6

and the phone records corroborating Mr. Ragosta's guilt. *See Brown*, 665 F.3d at 1247 n.3.

## II

Next we address Mr. Ragosta's argument that the district court erred by allowing the government to introduce a list of records accessed using Mr. Ragosta's credentials for DAVID—a database used by law enforcement officers to search for individuals' photographs and driver's license information. Mr. Ragosta contends that this evidence was irrelevant and prejudicial, and therefore should not have been admitted under Rule 404(b). He also asserts that the government failed to proffer sufficient proof that he was the person who accessed the records.

We generally review a district court's decision to admit evidence under Rule 404(b) for abuse of discretion. *See United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005). But our review here is only for plain error because Mr. Ragosta failed to renew his objection during trial after initially asserting it in a motion in limine. *See Brown*, 665 F.3d at 1247 (noting that an overruled motion in limine is insufficient to preserve an objection for appeal). Under plain error review, Mr. Ragosta must show (1) that there is error, (2) that the error is plain, (3) that the error affects his substantial rights, and (4) that the error seriously affects the fairness, integrity, or public reputation of the judicial proceeding. *See id.* A district court may admit evidence of other crimes, wrongs, or acts as proof of motive,

opportunity, intent, preparation, plan, or other non-character reasons. *See* Fed. R. Evid. 404(b). The three-part test for admissibility is (1) relevance to an issue other than the defendant's character, (2) sufficient evidence that the defendant committed the act, and (3) probative value not substantially outweighed by undue prejudice. *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

The district court did not err in admitting the evidence. Because the DAVID searches involved drug-unit officers or potential drug suppliers, the evidence was relevant to show Mr. Ragosta's intent and preparation for the drug conspiracy. Although there was evidence suggesting that another officer could have conducted the searches, the government's burden for admissibility was preponderance of the evidence. *See id.* ("[T]here must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question."). A reasonable jury could conclude that Mr. Ragosta conducted the DAVID searches given the evidence that each officer had a unique DAVID certificate and Mr. Ragosta's own testimony confirming that he conducted at least some of the searches (although his explanation for why he accessed the records differed from the government's proffered rationale). *See* R:108 at 188–92. Any undue prejudice, moreover, did not substantially outweigh the probative value of the evidence. We find no error, plain or otherwise, in the district court's decision to admit the DAVID evidence under Rule 404(b).

8

### III

Finally, we address the prosecutorial misconduct claim, which we also review for plain error because Mr. Ragosta raises it for the first time on appeal. *See United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997). Mr. Ragosta alleges that the government "altered its evidence at the second trial to defeat [his] alibis." Ragosta Br. at 20. To state a claim for prosecutorial misconduct based on the use of false testimony, Mr. Ragosta must show (1) that the prosecutor knowingly used perjured testimony or failed to correct testimony subsequently discovered to be false, and (2) that the falsehood was material. *See United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010).

Mr. Ragosta does not specifically identify what evidence he alleges to have been "altered" by the government. He points to the testimony of Robert Abbott regarding the timing of certain events, but provides no real basis for concluding that his testimony at the second trial contradicted his testimony at the first trial. In fact, Mr. Abbott consistently testified that he was unsure of the exact time he arrived home from the heist. *Compare* R:72 at 101 (testifying at the first trial that he arrived home at "approximately eight something—I can't remember the exact time"), *with* R:107 at 57 (testifying at the second trial that he couldn't recall the exact timeframe he arrived home, but that it was right before dusk).

Mr. Ragosta also claims the government made "inconsistent argument[s]"

9

about the timing of the heist by arguing at the first trial that it could not "pin down" the exact time of the drug heist, but subsequently arguing at the second trial that the heist took place during a specific, narrow timeframe. This argument is contradicted by the record, which indicates that the government argued at both trials that the heist could have occurred at certain different times based on phone records and witness testimony. *Compare* R:75 at 13 (closing argument at first trial, noting that "it could have been in various stages of when these things took place"), *with* R:111 at 14 (closing argument at second trial, noting that "it could have been at several times . . . but let me give you one scenario"). We find no error, much less plain error, where Mr. Ragosta fails to identify any false or perjured testimony to form the basis for his prosecutorial misconduct claim.

**AFFIRMED.**