[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12582
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cr-00011-BAE-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBBIE LOUIS REASON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(July 8, 2014)

Before PRYOR, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Robbie Louis Reason appeals his convictions and sentences for conspiracy to defraud the Government through false claims, in violation of 18 U.S.C. § 286, and theft of public money, in violation of 18 U.S.C. § 641.  Reason's convictions arise out of a scheme where he acted as the outside person facilitating a tax-fraud scheme in which a federal prisoner, using the identifying information of other prisoners, filed fraudulent tax returns and claimed unwarranted refund checks. Reason raises several issues on appeal, which we address in turn.  After review, we affirm Reason's convictions and sentences.

## I.  CONFRONTATION CLAUSE

Reason first asserts his Sixth Amendment Confrontation Clause rights were violated.  At trial, the Government admitted recorded telephone conversations between two of Reason's alleged co-conspirators, as well as the fraudulent tax returns.  Reason contends that, under the Confrontation Clause, the Government was required to make the speakers and authors of the tax returns available for cross-examination.

The Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. Const. amend. VI.  The Supreme Court has held that, in addition to in-court testimony, the Confrontation Clause applies to a "core class of 'testimonial'" out-of-court statements.  *Crawford v. Washington*, 541 U.S. 36, 51

2

(2004). A testimonial statement is inadmissible at trial without the witness's presence unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Id*. at 53-54.

In *Davis v. Washington*, 547 U.S. 813, 826-27 (2006), the Supreme Court explained that, when talking to authorities, a statement intended to establish or prove some past fact is testimonial, while a statement describing ongoing events for another purpose is not. The Supreme Court, later explained that a description of ongoing events did not fall within the Confrontation Clause because the primary purpose of the statement was not to create a record for trial. *Michigan v. Bryant*, 131 S. Ct. 1143, 1155 (2011). Relying on *Crawford*, but before the Supreme Court decided *Bryant*, we held the recorded declarations of a co-conspirator during a conversation between a confidential informant and the co-conspirator arranging a sale of cocaine was not testimonial. *United States v. Underwood*, 446 F.3d 1340, 1347 (11th Cir. 2006).

Reason never objected to the introduction of the recorded conversations or tax filings on Confrontation Clause grounds, so we review for plain error. *See United States v. Charles*, 722 F.3d 1319, 1322 (11th Cir. 2013) (reviewing a claim of Confrontation Clause error not raised in the district court for plain error). However, under any standard of review, Reason's arguments fail. The challenged conversations took place between two co-conspirators in furtherance of the

3

conspiracy.  They were plainly not within the "core class of testimonial" statements contemplated by the Confrontation Clause post-*Crawford*, as none of the statements were made with any intention of creating a record for trial.  *See Bryant*, 131 S. Ct. at 1155.  In light of our holding that a similar conversation with a Government informant does not implicate the Confrontation Clause, a conversation between two conspirators, neither of whom is working with the Government, falls even further outside the scope of the Sixth Amendment.  *See Underwood*, 446 F.3d at 1347.  Similarly, nothing about the fraudulently filed tax returns suggests they were made with any intent that would render them testimonial.

## II. PREJUDICIAL TESTIMONY

Reason next argues the district court erred in allowing a Government witness to imply that Reason and a co-conspirator spoke in "code words" on recorded conversations.  He argues that the testimony was unduly prejudicial and should have been excluded under Federal Rule of Evidence 403.

The Federal Rules of Evidence define "relevant evidence" as evidence that "has any tendency to make a fact more or less probable," provided that "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Generally, relevant evidence is admissible unless otherwise specified.  Fed. R. Evid. 402.  Relevant evidence "may" be excluded "if its probative value is substantially outweighed by

a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Reason never objected to the Government witness's use of the phrase "code words" at trial, and the district court did not plainly err in allowing the testimony. *See United States v. Smith*, 459 F.3d 1276, 1296 (11th Cir. 2006) (reviewing a claim of evidentiary error raised for the first time on appeal for plain error). When generally discussing the recorded phone calls, the Government witness testified that "they tend to speak in code and talk—they'll say, well, we can't talk about that. We have to be careful about talking about this and that." That statement referred to conversations among several conspirators, not Reason in particular. Further, the witness's explanation that by "code" he meant the speakers were evasive or indirect on telephone calls that they knew were being recorded was (1) not very prejudicial, as the conclusion was readily apparent from the portions of the phone calls played for the jury; and (2) highly probative of the speaker's state of mind. Therefore, under Rule 403, the court's admission of that statement was not plainly erroneous. *See* Fed. R. Evid. 403.

The other instance where the phrase "code words" was used was when the court, not the Government witness, in response to Reason's objection that the witness was speculating about Williams' intent, explained that, where speakers on

a recording were being evasive, someone familiar with the conversation could give their impression of what certain "code words" meant. However, that statement was made in reference to a specific phone call in which Reason was not involved. Any implication about the use of code words therefore (1) is outside the scope of what Reason is arguing on appeal, and (2) carried comparatively little risk of prejudice to Reason. Accordingly, Reason has not demonstrated any plain error by the district court under Rule 403.

## III.  LOSS AMOUNT

Reason next argues the loss amount attributed to him in calculating a sentence was excessive. He asserts the court's conclusion was improperly made without reference to Reason's role in the conspiracy.

Where a fraud conviction results in a loss between $2.5 million and $7 million, the Sentencing Guidelines call for an 18-level enhancement. U.S.S.G. § 2B1.1(b)(1)(J). In the context of discussing a loss-amount calculation, we have held a defendant may be held responsible for the reasonably foreseeable acts of his co-conspirators. *United States v. Mateos*, 623 F.3d 1350, 1370 (11th Cir. 2010). The district court is required to make an individualized finding regarding the scope of a particular defendant's criminal activity. *Id*. However, where a court determines the scope of a defendant's involvement includes the "essence of the fraud," it is not required to establish the defendant's involvement with each

6

specific method or instance of fraud.  *Id*. at 1370-71.  In *Mateos*, the defendant was aware she was part of a scheme to overbill Medicare.  The defendant argued that, while she knew some patients were receiving less medical care than the clinic was billing Medicare for, she did not know the clinic also billed Medicare for patients receiving no medical care at all, and therefore should not be held liable for the loss occasioned from the latter class of patients. The court held it was proper for the court to attribute the entire intended loss to the defendant whether or not she knew Medicare claims were submitted on behalf of patients who received no medical care, as she was aware of the overall goal of the conspiracy—to overbill Medicare. *Id.*

Reason cannot show clear error by the district court.  *See United States v. Medina*, 485 F.3d 1291, 1297 (11th Cir. 2007) (reviewing loss-amount determination for clear error).  After considering Reason's objections, the court adopted the facts contained in the PSI.  Reason did not object to the PSI's assertion that Reason negotiated the first of the treasury checks.  He also did not object to the PSI's assertions the scheme's organizer told Reason to have another conspirator add signatures to the check and Reason "agreed to cash additional U.S. Treasury checks."  Those facts were, therefore, admitted for sentencing purposes. *See United States v. Bennett*, 472 F.3d 825, 833-34 (11th Cir. 2006) (stating the failure to object to facts found in a presentence investigation report (PSI) renders

7

those facts admitted for sentencing purposes).  Reason's awareness he negotiated one treasury check in someone else's name, someone other than the named recipient signed the check, and there would be additional checks was sufficient to show Reason knew the general nature of the conspiracy—to obtain money from someone else's tax returns.  The court was not required to inquire into Reason's awareness of each individual tax return, as, once Reason was aware of the general nature of the conspiracy, he could be held accountable for the reasonably foreseeable intended loss of his co-conspirators.  *See Mateos*, 623 F.3d at 1370-71; *see also* U.S.S.G. § 2B1.1, comment. (n.3(A)(iv)) (explaining for purposes of the guideline, "'reasonably foreseeable pecuniary harm' means pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense").  Therefore, it was not error for the district court to have included the intended return for all nine filings made in its loss calculation, irrespective of whether Reason was aware of each individual filing.  Accordingly, it did not clearly err in imposing the 18-level enhancement.

## IV. SOPHISTICATED MEANS

Reason next argues the court erred in imposing a two-level sophisticated means increase under U.S.S.G. § 2B1.1(b)(10).  He asserts there was no evidence that any conspirator sought to relocate the scheme to avoid law enforcement, and there was no evidence the scheme involved otherwise sophisticated means.

8

Where a theft-related offense involves sophisticated means, the offense level should be increased by two levels.  U.S.S.G. § 2B1.1(b)(10)(C).  The two-level enhancement can also apply where the defendant participated in relocating a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials.  U.S.S.G. § 2B1.1(b)(10)(A).  The enhancement may apply even where each individual action by a defendant is not sophisticated, so long as the overall scheme was sophisticated.  *United States v. Barrington*, 648 F.3d 1178, 1199 (11th Cir. 2011).  We have upheld the sophisticated-means enhancement where the defendant, in addition to forging documents, had the proceeds of his fraud transferred to unwitting third parties, who then transferred the money to him.  *United States v. Ghertler*, 605 F.3d 1256, 1267-68 (11th Cir. 2010).

The imposition of the sophisticated means enhancement was not clear error.  *See Barrington*, 648 F.3d at 1198-99 (reviewing a district court's finding a defendant used sophisticated means for clear error).  The offense involved the filing of fraudulent tax returns with purportedly legitimate documentation using real corporation names and employer identification numbers; the use of written communications, some disguised as legal mail; careful communication to evade discovery by prison officials; and a plan to launder money through a car dealership.  *See United States v. Madoch*, 108 F.3d 761, 766 (7th Cir. 1997) (holding concealment effort were sophisticated enough to warrant the enhancement

9

when a defendant created false W-2 forms, phony itemized deductions and employment records and filed them under the social security numbers of knowing accomplices and unwitting clients, and had the refund checks mailed to five different addresses).  Reason negotiated the refund check, in excess of $200,000, to a car dealership to buy a car worth about $10,000.  Once the check cleared, Reason directed the dealership to account for the excess money by writing its own separate checks to seven different conspirators in the scheme.  Reason's tax scheme was more complex and demonstrated greater intricacy or planning than a routine tax-evasion case.  *See Ghertler*, 605 F.3d at 1267-68; *United States v. Ambort*, 405 F.3d 1109, 1120 (10th Cir. 2005).  Accordingly, the district court did not clearly err in imposing a sophisticated means enhancement.

## V.  OBSTRUCTION OF JUSTICE

Reason last argues the court erred in imposing a two-level U.S.S.G. § 3C1.1 enhancement for obstruction of justice.  The court imposed the enhancement after concluding that Reason perjured himself when he testified at trial.

The Sentencing Guidelines provide for a two-level enhancement where a defendant "willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" and where the obstructive conduct related to the offense of conviction.  U.S.S.G. § 3C1.1.  Perjury, where the perjury regarded a material matter and was

10

not due to confusion or mistake, warrants the imposition of the enhancement.  *Id*.

§ 3C1.1, comment. (n.4(B)); *see United States v. Williams*, 627 F.3d 839, 845

(11th Cir. 2010).

Here, the district court found that there was "abundant evidence" that

Reason perjured himself during the trial.  There was evidence in the Government's

case that Reason and a co-conspirator had discussed finding "fake dependents" for

Reason so that he would no longer owe the IRS money.  In his testimony, Reason

testified he never discussed defrauding the Government.  That conflicting

testimony alone was sufficient to show that the district court did not clearly err in

imposing the § 3C1.1 enhancement based on perjured testimony.  *See Williams*,

627 F.3d at 845.  Accordingly, the district court did not clearly err in imposing this

enhancement.  *See id.* at 844 (reviewing the factual findings underlying an

obstruction of justice enhancement for clear error).

**AFFIRMED.**