**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lloyd C. TOP SKY, Defendant-Appellant.**

**No. 75–3163.**

United States Court of Appeals,
Ninth Circuit.

Dec. 21, 1976.

---

Bruce R. Greene (argued), N. D., for defendant-appellant.

Paul L. Westberg, Asst. U. S. Atty. (argued), Boise, Idaho, for plaintiff-appellee.

Before BROWNING and WALLACE, Circuit Judges, and EAST,* District Judge.

PER CURIAM:

Appellant Lloyd Top Sky was indicted for violating the Bald Eagle Protection Act, 16 U.S.C. § 668 (Supp. V, 1975), *amending* 16 U.S.C. § 668 (1970), by selling a fan and a bustle made of golden eagle feathers to government undercover agents. He was convicted and appeals. In a companion case, appellant's father, Charlie Top Sky, was also convicted of violating the Bald Eagle Protection Act, and also appealed. Many of the claims asserted by the son are dealt with in our opinion in the father's appeal. *United States v. Charlie Top Sky,* 547 F.2d 486 (9th Cir. 1976).

Assuming conflicts in the evidence in the government's favor, the following facts were established at appellant's trial. On February 6, 1974, appellant was visited at his father's home by agents Halstead and Kirkland of the United States Fish and Wildlife Service, who had been informed by appellant's father that appellant had eagle feather fans for sale. This was appellant's first contact with the agents. The agents, who are not Indians, identified themselves as representatives of the Delaware Down and Feather Company and told appellant they wished to purchase eagle feathers for resale to collectors on the east coast. After the agents discussed other transactions with appellant's father, appellant produced five feathered fans and quoted a price for each. Halstead selected two and wrote appellant a check for $85. One fan, for which the agent paid $50, was made of eagle feathers. On February 27 appellant telephoned Kirk-

land and offered to sell two bustles made of eagle feathers at $75 each. On March 5 Kirkland picked up the two bustles and wrote a check to appellant for $150.

Appellant asserts that because he acquired the feathers for the fan sold to Halstead from a member of the Shoshone-Bannock Tribe, the sale is not subject to the proscriptions of the Bald Eagle Protection Act because of the Fort Bridger Treaty of 1868, 15 Stat. 673. The contention that the treaty reserved the right to sell eagles or eagle feathers or parts was considered and rejected in the companion case, *United States v. Charlie Top Sky, supra* at 487– 488. That analysis is fully applicable here.

This determination makes it unnecessary to consider appellant's related contention that the Shoshone-Bannock Tribe is the only entity possessing jurisdiction to regulate the exercise of treaty selling rights.

Appellant argues that the Major Crimes Act, 18 U.S.C. § 1153 (1970), is the only vehicle through which Congress can extend federal criminal jurisdiction over Indian tribes in abrogation of their treaty powers of self-government. *United States v. Burns,* 529 F.2d 114 (9th Cir. 1976), disposes of this claim. As the court there explained, the Major Crimes Act deals with the application of federal enclave law to Indians and has no bearing on the application of general laws of the United States making actions criminal wherever committed. 529 F.2d at 117. The Bald Eagle Protection Act is such a general law. In the absence of a treaty right exempting appellant from its operation, the Bald Eagle Protection Act applies to him. *See id.* As we said in *Burns:*

> An examination of the Fort Bridger Treaty, July 3, 1868, 15 Stat. 673, discloses no language purporting to exempt Indians from the laws of general applicability throughout the United States regardless of situs of the act, and the defendant points to none.

* Honorable William G. East, United States Senior District Judge, District of Oregon, sitting by designation.

*Id.* Since we have concluded that the treaty did not reserve to the Indians the right to sell eagle feathers, appellant is not exempt from the operation of the Bald Eagle Protection Act.

■ Appellant claims that the Act infringes upon the Indians' right to free exercise of religion. He describes himself as a craftsman who makes eagle feather articles for use in religious ceremonies. He contends it is acceptable to his religious faith that he receive money from Indians in compensation for his labor in preparing the articles. When this occurs among Indians, he asserts, it is an "exchange," not a commercial sale.

Accepting the accuracy of these characterizations, they are of no benefit to appellant. For the reasons suggested in *Charlie Top Sky, supra* at 488, appellant lacks standing to raise free exercise issues. "[I]t is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion." *Abington School District v. Schempp,* 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (1963). *Accord, Board of Education v. Allen,* 392 U.S. 236, 248–49, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968). We are not confronted here with an exchange among Indians or a purchase for religious use; the purchasers were non-Indians, and they asserted only a commercial interest in the items. The trial court's finding, clearly supported by the record, that the commercial sale of eagles and eagle feathers and parts violates the beliefs of members of the Native American Church negates any possibility that this prosecution infringes the practice by appellant of his religion. On the basis of the principles discussed in *Charlie Top Sky, supra* at 488, we decline to consider at appellant's behest the potential infringement of the free exercise of religion by others.

Appellant's final assertion is that he was entrapped as a matter of law because the government failed to sustain its burden of showing he was predisposed to sell eagle feathers, and because "the nature of this case" requires holding the government to a higher standard of noninvolvement than in the usual case.

■ The government offered evidence that appellant's father told the government agents that appellant had eagle feather fans for sale, and that appellant without reluctance completed a sale to the agents within an hour after he had been introduced to them, and after he had warned the agents it was against the law to purchase or sell eagle feathers. On the basis of this evidence the jury could conclude beyond a reasonable doubt that this case was not one in which "the Government's deception actually implant[ed] the criminal design in the mind of the defendant." *Hampton v. United States,* 425 U.S. 484, 489, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976).

Appellant asserts that the selling of eagle feathers is not inherently harmful, and that we should therefore require government agents, before engaging in the kinds of undercover techniques used here, to have probable cause to believe the feathers were obtained by the seller in a way contrary to the purpose of the Act. Appellant's theory would require a finding of entrapment based upon the actions of the government agents short of a violation of due process. *Hampton* bars such an extension of the entrapment defense. Moreover, there is no basis for distinguishing this criminal statute from others in terms of acceptable law enforcement techniques. One of the means adopted by Congress to avoid extinction of the bald and golden eagles was to prohibit the sale of their feathers regardless of the source from which the seller obtained them. As the government points out, undercover work is often required to uncover such sales. Because purchase as well as sale of eagle feathers is prohibited, the transaction usually will be conducted in secret, and there will be no willing witnesses.

Affirmed.