UNITED STATES of America,
Plaintiff-Appellee,

v.

Charlie TOP SKY, Defendant-Appellant.

No. 75–3193.

United States Court of Appeals,
Ninth Circuit.

Dec. 21, 1976.

James W. Zion, Great Falls, Mont., for defendant-appellant.

Paul L. Westberg, Asst. U. S. Atty., Boise, Idaho, for plaintiff-appellee.

Before BROWNING and WALLACE, Circuit Judges, and VAN PELT,* District Judge.

PER CURIAM:

Charlie Top Sky and Lloyd C. Top Sky, father and son, members of the Chippewa-Cree Tribe, were charged in separate indictments with selling golden eagles and golden

* Honorable Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation.

eagle feathers and parts in violation of the Bald Eagle Protection Act, 16 U.S.C. § 668 (Supp. V, 1975), *amending* 16 U.S.C. § 668. Both filed motions to dismiss on the grounds that their conduct was protected by the Fort Bridger Treaty of July 3, 1868, 15 Stat. 673, and, alternatively, that the Bald Eagle Protection Act violated the "Free Exercise" clause of the First Amendment with respect to the Original Native American Church. The court denied the motions after an evidentiary hearing. The two Top Skys were separately tried and convicted. They took separate appeals. This opinion deals with Charlie Top Sky's appeal. Lloyd C. Top Sky's appeal is the subject of a separate opinion. 547 F.2d 483 (9th Cir. 1976).

Resolving conflicts in the evidence favorably to the government, the facts established at the trial of Charlie Top Sky were as follows. During the two-year period immediately preceding the transactions alleged in the indictment, appellant received a total of twenty-one whole golden eagles and parts of five other golden eagles from the United States Fish and Wildlife Service, pursuant to regulations established by that agency under the Bald Eagle Protection Act. *See* 50 C.F.R. § 22 (1975). In January and February of 1974 appellant was contacted by agents Halstead and Kirkland of the Fish and Wildlife Service, who identified themselves as representatives of the Delaware Down and Feather Company. The agents expressed an interest in purchasing whole eagles, their feathers, and other parts. The agents, who are not Indians, told appellant they wished to buy feathers for resale to east coast collectors. Agent Halstead told appellant he wished to buy whole eagles to mount and display in the company's offices. These purely commercial purposes were the only ones discussed with appellant; appellant did not mention any personal religious belief related to eagles. On five occasions between February and April 1974, appellant contacted the government agents and sold them

eagles and eagle feathers and parts, including three whole eagles, sixteen talons, fourteen wings, and eleven tails, for which he received cash, money orders, and checks totaling more than $1200.

Article 4 of the Fort Bridger Treaty reserves to Shoshone and Bannock Indian tribes [1] the right "to hunt on the unoccupied lands of the United States." Appellant argues that the reserved hunting right includes the right to hunt and to sell eagles.

The treaty is to be construed as the Indians would have understood it, *Choctaw Nation v. Oklahoma,* 397 U.S. 620, 631, 90 S.Ct. 1328, 25 L.Ed.2d 615 (1970); *United States v. Shoshone Tribe,* 304 U.S. 111, 116, 58 S.Ct. 794, 82 L.Ed. 1213 (1938), as disclosed by the practices and customs of the Indians at the time the treaty was negotiated, *Kimball v. Callahan,* 493 F.2d 564, 566 (9th Cir. 1974); *Moore v. United States,* 157 F.2d 760, 762–63 (9th Cir. 1946), and by the history of the treaty, the negotiations that preceded it, and the practical construction given the treaty by the parties, *Skokomish Indian Tribe v. France,* 320 F.2d 205, 207–08 (9th Cir. 1963), *quoting Choctaw Nation v. United States,* 318 U.S. 423, 431–32, 63 S.Ct. 672, 87 L.Ed. 877 (1943). In sum, the treaty is to be interpreted to attain the reasonable expectations of the Indians. Wilkinson & Volkman, *Judicial Review of Indian Treaty Abrogation,* 63 Calif.L.Rev. 601, 617–18 (1975).

In ruling on appellant's motion to dismiss after an evidentiary hearing, the trial court stated, "There is no such historical evidence in the present case that discloses a pattern of sale of eagle parts. Quite to the contrary, it is pointed out that the sale of eagle parts is incompatible with Indian religious beliefs." The court continued, "All of the testimony received disclosed the fact that the sale of eagle parts is deplored by the Indians as a matter of tribal custom and religion."

The district court finding that the eagle had a special religious significance

1. As noted at the outset, the Top Skys are members of the Chippewa-Cree Tribe of Indians. Because of the conclusion we reach as to the scope of the Fort Bridger Treaty, we need not consider whether the Top Skys are entitled to claim the treaty's benefits.

and that as a result the Indians did not deal commercially in eagles or eagle parts is binding unless clearly erroneous. *Skokomish Indian Tribe v. France, supra,* 320 F.2d at 210. The finding is supported by the record.

■ In light of this finding it would be contrary to the expectations of the Indians to interpret the "right to hunt" reserved by the treaty to include the right to sell eagles commercially.[2] Reservation of a right to sell eagles would have accorded official recognition to a practice the Indians in fact deplored.

The Bald Eagle Protection Act is a federal statute of general applicability making actions criminal wherever and by whomever committed. "Such laws are applicable to the Indian unless there exists some treaty right which exempts the Indian from the operation of the particular statutes in question." *United States v. Burns,* 529 F.2d 114, 117 (9th Cir. 1976). Since the commercial sale of eagles or eagle parts is beyond the scope of the Fort Bridger Treaty, the Bald Eagle Protection Act applies to such commercial sales by appellant.[3]

*United States v. White,* 508 F.2d 453 (8th Cir. 1974), is not to the contrary. The court held only that the Bald Eagle Protection Act did not abrogate the Fort Bridger Treaty. We do not reach that question.[4] We hold that the Fort Bridger Treaty does not apply to the conduct involved in this case. The question of treaty coverage upon which our decision rests was apparently not considered in *White.*

■ The district court's factual findings also undercut appellant's claims that prosecution under the Bald Eagle Protection Act infringes appellant's right to free exercise of religion, and that the Act is overbroad.

As the trial court said, "the present criminal prosecution is for 'selling' eagle parts, which is not only not a part of the Indian religion, but the act of selling is deplored by the Indian religion." Since appellant was prosecuted for purely commercial activities, the prosecution imposed no burden upon appellant's free exercise of religion. Appellant's attack on the permit system established under the Act's exception for religious use, 50 C.F.R. § 22 (1975), suffers from the same flaw; there is no evidence that the permit system burdened appellant's free exercise of religion. On the contrary, as noted earlier, the evidence shows that appellant had no difficulty in procuring eagles under the permit system, obtaining all or part of twenty-six eagles from the Fish and Wildlife Service during the two-year period immediately preceding the transactions for which he was indicted.

■ Appellant lacks standing to assert a claim that the free exercise of religion by

---

2. There was no such finding in the cases relied upon by appellants for the proposition that a treaty reservation of the right to hunt is to be interpreted as including the right to sell. Indeed, in these cases the historical evidence established the existence of commercial activity. *See, e. g., Puyallup Tribe v. Dep't of Game,* 391 U.S. 392, 398–99, 88 S.Ct. 1725, 20 L.Ed.2d 689 (1968); *United States v. Washington,* 384 F.Supp. 312, 343 n.29, 351–52 (W.D.Wash. 1974), *aff'd,* 520 F.2d 676 (9th Cir. 1975); *State v. Bodin, Bayfield County Court* (Wisc. Apr. 26, 1973). *But cf. Pioneer Packing Co. v. Winslow,* 159 Wash. 665, 294 P. 557 (1930).

Cases relied upon by appellant for the principle that when a wild animal is caught or killed it becomes the personal property of the hunter, *Blades v. Higgs* (1865), 11 English Reprint 1474; *Liesner v. Wanie,* 156 Wis. 16, 145 N.W. 374 (1914); *James v. Wood,* 82 Me. 173, 19 A. 160 (1889), are also irrelevant, for the issue at stake is not the general law of property but the proper interpretation of the language of the Fort Bridger Treaty.

3. Congress intended the Bald Eagle Protection Act to apply to Indians, as evidenced by the express exception of the taking of eagles "for the religious purposes of Indian Tribes." 16 U.S.C. § 668a. Regulations adopted by the United States Fish & Wildlife Service, Department of Interior, to implement this exception provide for the issuance of permits to take eagles for religious purposes, and stipulate that "[o]nly applications from individual Indians will be accepted." 50 C.F.R. § 22.22(a) (1975).

4. We wish to avoid any suggestion that we agree or disagree with the *White* majority on the issue of treaty abrogation. · The Eighth Circuit was divided; Judge Lay's dissent is a substantial one. We leave the question entirely open until it is necessary to decide it.

others has been infringed, or "chilled," by the Act. Federal courts have jurisdiction to strike down statutes as unconstitutional only when called upon to determine the legal rights of litigants in actual controversy. *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). "[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *Id. Accord, McGowan v. Maryland,* 366 U.S. 420, 429, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Barrows v. Jackson,* 346 U.S. 249, 255, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). "Those persons whose religious rights are allegedly impaired by the statutes are not without effective ways to assert these rights." *McGowan v. Maryland, supra,* at 430, 81 S.Ct. at 1107.

Appellant's lack of standing is not remedied by invocation of the overbreadth doctrine. The overbreadth doctrine "has been employed by the [Supreme] Court sparingly and only as a last resort." *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). The doctrine, traditionally applied in the free speech area, *but cf. Aptheker v. Secretary of State,* 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964), is particularly limited where "the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe." *Id.* at 615, 93 S.Ct. at 2917. In such a case—and this is one—"the overbreadth of a statute must not only be real,

but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id. Accord, Parker v. Levy,* 417 U.S. 733, 760, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Kannisto v. San Francisco,* 541 F.2d 841 (9th Cir. 1976).

 Applying this test, we conclude that the Bald Eagle Protection Act should not be invalidated as facially overbroad. This Act, like the statute involved in *Broadrick,* "is not substantially overbroad and . . . whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Id.* at 615–16, 93 S.Ct. at 2918.

Appellant's remaining contentions are without merit. The trial court properly instructed the jury with respect to entrapment; there was no error in the court's refusal to caution the jury regarding evidence of appellant's alleged involvement in the killing of eagles; and it was not error to deny appellant's motion for acquittal.

Affirmed.