**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 22-14126

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

SYLVANIS BRICE,
  a.k.a. Fish,
JOHAN HOLDER,
  a.k.a. Hun,
URIAH WAGGERBY,

*Defendants-Appellants.*

————————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:19-cr-00004-TPB-NPM-2

————————————

Before NEWSOM, BRASHER, and TJOFLAT, Circuit Judges.

BRASHER, Circuit Judge:

A jury convicted Uriah Waggerby, Sylvanis Brice, and Johan Holder of conspiracy to commit Hobbs Act robbery, and it convicted Brice and Holder of attempted Hobbs Act robbery as well. Their appeals raise two main issues: (1) whether the federal courts may hear prosecutions for federal offenses committed by Indians, against Indians, in Indian country, and (2) the need to conduct an on-the-record balancing before admitting evidence of a criminal defendant's prior convictions. Waggerby says that, because he is an enrolled member of an Indian tribe and he committed an offense against another Indian while in Indian country, he cannot be prosecuted for Hobbs Act violations in federal court. Brice argues that the district court committed a reversible error by failing to conduct an express balancing test before admitting evidence of his prior convictions.

We reject both arguments. We hold, in line with the relevant statutes and precedents from the Supreme Court and our sister circuits, that federal jurisdiction exists over all offenses prosecuted under generally applicable federal statutes—even when those crimes were committed by an Indian, against an Indian, in Indian country. We agree with Brice that the district court should have performed an on-the-record balancing before admitting evidence of Brice's prior conviction. But we can say with certainty that this error was harmless. As for Holder, he makes only one argument, which he concedes has been foreclosed by our precedent. Accordingly, we affirm as to all three defendants.

## I.

Waggerby, Brice, and Holder conspired to rob Reuben Billie, Jr., a marijuana dealer, at his home on the Big Cypress Seminole Indian Reservation. During the course of this ill-fated robbery, a bystander named Ronny Billie, Jr. was shot and killed. The robbers promptly fled the scene of the crime without successfully stealing any money or drugs.

The day after the robbery, Brice went to the home of Demaster Auther, a known thief and burglar. Brice told Auther what had happened the night before, claiming responsibility for the shooting and discussing Holder's involvement. Auther had a friendly relationship with both Brice and Holder. Two days later, Holder also went to Auther's house and told him about the crimes in question. During this conversation, Holder claimed that *he* was responsible for the shooting, and not Brice.

Auther took this information to law enforcement, and the FBI gave him a device so that he could record a conversation with Brice. He did so. In this conversation, Brice gave what the government later described as a "play-by-play, blow-by-blow account of" the robbery. Doc. 428 at 17. Brice directly implicated Holder in his account of the crime.

After a series of superseding indictments, Waggerby, Brice, Holder, and another alleged conspirator, Kaleb James, were charged with three counts. Count one was conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). Count two was attempted Hobbs Act robbery, in violation of 18 U.S.C.

§§ 1951(a)–(b) and 1952. And count three was conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(D).

Waggerby moved to dismiss the superseding indictment. He argued that the district court lacked subject matter jurisdiction because (1) both he and his alleged victim were members of Indian tribes, (2) the alleged crime occurred in Indian country, and (3) none of the charged offenses were listed in the Major Crimes Act, 18 U.S.C. § 1153. The government opposed the motion, arguing that federal crimes of general applicability—such as the charged offenses—may be prosecuted in federal court even if they occurred between Indians and in Indian country. The district court agreed with the government and denied Waggerby's motion.

The prosecution eventually proceeded to trial. Over the course of the trial, the government presented a series of sworn post-*Miranda* interviews in which Waggerby confessed to telling third parties to rob Reuben Billie, a fellow Indian, what items to take, and where to commit the robbery. In these statements, however, Waggerby did not implicate either Brice or Holder. Instead, he claimed that his coconspirators had been "Little Boo," "Leland Miller," and "ABM Ball."

The government then admitted the recording of Brice's conversation with Auther—the conversation in which Brice confirmed that both he and Holder were present for, and involved in, the robbery. And the government corroborated Brice's recorded description of the crime with home surveillance footage. This footage

showed men with the height and build of Brice and the other defendants struggling with Reuben at his door. The government further corroborated the recordings with, among other things, cell site records showing Brice leaving the reservation and driving south at roughly the time he had detailed to Auther. Cell records also placed phones associated with Brice, Waggerby, and Holder near the crime when it was committed. Finally, ballistics evidence further corroborated Brice's account.

During the trial, the government sought to introduce evidence of Brice's prior convictions to impeach exculpatory statements that he had made to a government witness. Specifically, the government called to the stand Detective Romanello, who had interrogated Brice. On cross examination, Brice elicited Romanello's testimony about exculpatory statements that Brice had made during the interrogation—that he was with his family on the night of the robbery and had nothing to do with it. Because Brice had elicited his own self-serving hearsay during Detective Romanello's testimony, the government argued that Brice's convictions were relevant to Brice's credibility.

Brice objected and noted that the court had to make an on-the-record finding that the probative value of admitting the evidence outweighed its prejudicial effect. He also argued that the prior convictions would be unduly prejudicial because they would compel the jury to believe that Brice should be convicted due to bad character. The court encouraged the parties to confer and

decide what would be admitted. Brice, however, declined to stipulate to admission and risk losing his objection.

The court ruled that the "first page" of all Brice's relevant prior convictions would be admitted with the misdemeanors whited out. Doc. 426 at 274. The government ultimately introduced copies of judgments showing that Brice had previously been convicted of aggravated assault with a deadly weapon, battery on a detainee, possession of a firearm by a felon, and fleeing and eluding law enforcement.

At the conclusion of the trial, the jury found Waggerby guilty on count one, but not guilty on counts two and three. They found Brice and Holder guilty on both counts one and two, but not guilty on count three. James was found not guilty on all counts. Waggerby, Brice, and Holder timely appealed.

## II.

We must address two issues to resolve this appeal.[1] Waggerby argues that the federal courts lack jurisdiction over his

---

[1] Brice and Holder raised additional issues, but they forthrightly conceded that these arguments are inconsistent with binding precedent. Brice argued that the trial court violated his rights under the Speedy Trial Act, 18 U.S.C. § 1361. But, in his reply brief and at oral argument, he conceded that this issue was foreclosed by precedent. *See, e.g.*, *United States v. Isaacson*, 752 F.3d 1291, 1300 (11th Cir. 2014) (noting that, if a defendant does not move to dismiss an indictment, he has waived any future Speedy Trial claim). For his part, Holder argued that the admission of Brice's conversation with Auther violated his Confrontation Clause rights. But, at oral argument, he conceded that our precedents foreclosed this argument. *See, e.g.*, *United States v. Hano*, 922 F.3d 1272,

prosecution because both he and his victim are enrolled members of an Indian tribe and the crime occurred in Indian country. Brice argues that the district court committed a reversible error by admitting his prior convictions without an express finding that the probative value of the evidence outweighed the prejudicial effect. We discuss each argument in turn.

### A.

We start with the jurisdictional issue. "Criminal jurisdiction over offenses committed in Indian Country" is governed by "a complex patchwork of federal, state, and tribal law." *Negonsott v. Samuels*, 507 U.S. 99, 102 (1993) (citation modified). Waggerby argues that the federal courts lack jurisdiction over Indian-on-Indian crimes, committed in Indian country, unless the offense committed is one enumerated in the Major Crimes Act, 18 U.S.C. § 1153. Because Hobbs Act conspiracy, 18 U.S.C. § 1951(a), of which Waggerby was convicted, is not an enumerated offense in the Major Crimes Act, Waggerby believes that there is no federal subject matter jurisdiction here.

This Court has never determined whether, absent enumeration in the Major Crimes Act, federal courts have jurisdiction over

---

1287 (11th Cir. 2019) (observing that the Confrontation Clause prohibits only the admission of testimonial statements); *see also United States v. Underwood*, 446 F.3d 1340, 1347 (11th Cir. 2006) (holding that an admission to a confidential government informant is not a testimonial statement). We appreciate the candor of Brice's and Holder's counsel, note that they have preserved these arguments, and reject them as inconsistent with our precedents.

violations of generally applicable federal crimes that were committed by one Indian against another in Indian country. Because we hold that federal courts do have such jurisdiction, we affirm Waggerby's conviction.

1.

At the outset, we start with some background on federal Indian law. Federal statutes governing criminal activity in Indian country fall into two categories: enclave statutes and general criminal laws.

First, there are the federal enclave statutes. Federal enclave statutes make "the situs of the offense . . . an element of the crime." *United States v. Begay*, 42 F.3d 486, 498 (9th Cir. 1994). The Assimilative Crimes Act is a classic example of such a statute. 18 U.S.C. § 13. It outlaws any act that "would be punishable if committed or omitted within the jurisdiction of the State" in which the federal enclave is located. *Id.* § 13(a). In doing so, it "authorizes federal courts to exercise jurisdiction over violations of state law that occur in the special maritime or territorial jurisdiction of the United States if no federal statute proscribes such violations." *United States v. Gaskell*, 134 F.3d 1039, 1041 (11th Cir. 1998). For example, driving under the influence of alcohol at a federal installation can be prosecuted federally under this Act even though no federal statute proscribes driving drunk. *See United States v. Pate*, 321 F.3d 1373, 1374 (11th Cir. 2003).

In addition to the Assimilative Crimes Act, Congress adopted another federal enclave statute, the Indian Country

Crimes Act, 18 U.S.C. § 1152. This Act extends federal enclave laws to Indian country: "the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States shall extend to the Indian country." *Id.* But the second paragraph of the Act excepts "offenses committed by one Indian against the person or property of another Indian." *Id.* Under the Indian Country Crimes Act, then, federal courts may exercise jurisdiction over any crime committed by an Indian against a non-Indian if it was (a) committed in Indian country and (b) covered by a federal enclave statute.

The Major Crimes Act is a subset of these federal enclave statutes. In 1883, the Supreme Court interpreted several federal enclave statutes to mean that there was no federal jurisdiction over the murder of one Indian by another in Indian country. *Ex parte Crow Dog*, 109 U.S. 556, 558–59 (1883). In response, and "in order to curb a perceived lawlessness resulting from the *Crow Dog* decision, Congress passed the . . . Major Crimes Act, 18 U.S.C. § 1153[.]" *United States v. Wadena*, 152 F.3d 831, 840 (8th Cir. 1998). This Act provides for federal jurisdiction over certain enumerated offenses "within Indian country" when committed by one Indian against another. 18 U.S.C. § 1153. The enumerated offenses include murder, manslaughter, kidnapping, maiming, incest, felony assault, assaults against minors, felony child abuse or neglect, arson, burglary, and robbery. *Id.* They also include "a felony under chapter 109A" and "a felony under section 113," which are crimes specific to the special maritime and territorial jurisdiction of the United States. *See, e.g.*, 18 U.S.C. § 661. When the elements of a

crime are not defined by federal law, the Major Crimes Act imports the substantive criminal law of the state where the enclave is located just like the Assimilative Crimes Act. *Id.* at (b).

Second, and in addition to (but separate from) these enclave statutes, there are generally applicable criminal laws that apply to everyone, everywhere. These laws apply in Indian country just as they do outside of Indian country. *See Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 116 (1960) ("[A] general statute in terms applying to all persons includes Indians and their property interests."). Take, for instance, the prohibition against assaulting a federal officer, 18 U.S.C. § 111. The prohibition against assaulting a federal officer subjects *anyone* who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated [as a federal officer] while engaged in . . . official duties" to criminal penalties, without reference to the territorial jurisdiction or the identity of the perpetrator. 18 U.S.C. § 111. Because this statute is generally applicable, it applies with full force in Indian country. *See United States v. Wheeler*, 435 U.S. 313, 330 n.30, 331 n.31 (1978) ("Federal jurisdiction also extends to crimes . . . over which there is federal jurisdiction regardless of whether an Indian is involved, such as assaulting a federal officer.").

Hobbs Act robbery is another such generally applicable criminal offense. The Act prohibits anyone, anywhere, from "in any way or degree obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so[.]" 18

U.S.C. § 1951(a). Within the statute, "commerce" is defined as "commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State [or] Territory . . . and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction." *Id.* § 1951(b)(3). Because a crime's connection to interstate commerce does not turn on the crime's location, *United States v. Diaz*, 248 F.3d 1065, 1084 (11th Cir. 2001), the situs of the offense is not an element. The Act applies in Indian country by its own terms, and nothing in its terms limits how it applies to Indian-on-Indian crime.

2.

With the stage set, we can return to Waggerby's argument. He argues that the Indian Country Crimes Act and the Major Crimes Act preclude federal prosecution of any crimes that are not listed in the Major Crimes Act, if those crimes are committed by an Indian, against an Indian, and in Indian country. Because Hobbs Act robbery is not listed in the Major Crimes Act, he says that the district court should have dismissed his indictment for lack of subject matter jurisdiction.

Although we have not addressed this issue, our sister circuits are unanimous in rejecting Waggerby's position. For instance, the Eighth Circuit has held that the federal airborne hunting statute is a "crime of general applicability," because "the situs of the offense is not an element of the crime," and it therefore applies broadly in

Indian country notwithstanding the Major Crimes Act. *United States v. Stone*, 112 F.3d 971, 973 (8th Cir. 1997). Similarly, the Ninth Circuit has held that the Bald Eagle Protection Act, though not enumerated in the Major Crimes Act, has full force in Indian country. *United States v. Top Sky*, 547 F.2d 483, 484 (9th Cir. 1976). In so doing, the Ninth Circuit held that the Major Crimes Act "deals with the application of federal enclave law to Indians and has no bearing on the application of general laws of the United States [that] mak[e] actions criminal *wherever committed*." *Id.* (emphasis added). *See also United States v. Boots*, 80 F.3d 580, 593 (1st Cir. 1996), *overruled in part on other grounds by Pasquantino v. United States*, 544 U.S. 349, 354 (2005); *United States v. Yannott*, 42 F.3d 999, 1004 (6th Cir. 1994); *United States v. Barquin*, 799 F.2d 619, 621 (10th Cir. 1986).

We agree with our sister circuits that federal courts may exercise jurisdiction over generally applicable federal crimes—even when the offense is committed by an Indian, against an Indian, while in Indian country. We do so for three reasons.

First, the text of the Indian Country Crimes Act and the text of the Major Crimes Act establish that they are about federal enclave laws, not criminal laws of general applicability. The Indian Country Crimes Act extends federal enclave laws to Indian country. It says that "the general laws of the United States as to the punishment of offenses committed *in any place within the sole and exclusive jurisdiction of the United States*" apply "to the Indian country." 18 U.S.C. § 1152 (emphasis added). The Indian Country Crimes Act has an exception for Indian-on-Indian crimes. *Id.* The Major Crimes

Act, formally titled "Offenses Committed within Indian Country," then acts as an exception to that exception. 18 U.S.C. § 1153. It says that, notwithstanding the Indian Country Crimes Act, there is federal jurisdiction over certain enumerated enclave-related offenses. *Id.* Specifically, it provides that "[a]ny Indian who commits against the person or property of another Indian or other person any of the [enumerated offenses] shall be subject to the same law and penalties as all other persons committing any of the above offenses, *within the exclusive jurisdiction of the United States.*" *Id.* (emphasis added).

That list of offenses underscores that the Major Crimes Act is about federal enclave laws. The enumerated offenses in the Major Crimes Act fall into one of two categories: they are either offenses of the kind generally prosecuted by the several states and not made illegal by any particular federal statute, such as murder, or they are federal enclave offenses in which the situs is an element of the crime, such as "a felony under Chapter 109A." 18 U.S.C. § 1153. For the state-law offenses, the law of the state in which the enclave is located applies; for the federal offenses, the statute references specific federal enclave statutes. *Id.* § 1153(b). In other words, the enumerated offenses are the same kind of offenses that are covered under the Assimilative Crimes Act (state law offenses) and the Indian Country Crimes Act (enclave laws). The point is that, for the specifically enumerated crimes in the Major Crimes Act, the federal government can prosecute crimes committed in Indian country by Indians, against Indians—which it could not previously. But the Act

does not purport to limit the United States's ability to prosecute generally applicable federal crimes committed in Indian country.

Second, in addition to the text, our reading is most consistent with Supreme Court precedent. The Supreme Court has suggested that federal offenses that apply to everyone, everywhere extend to crimes committed by Indians, against Indians, in Indian country. *See Wheeler*, 435 U.S. at 330 n.30, 331 n.31 ("Federal jurisdiction also extends to crimes . . . over which there is federal jurisdiction regardless of whether an Indian is involved, such as assaulting a federal officer[.]"). And the Court has likewise held that a "general statute in terms applying to all persons includes Indians and their property interests." *Tuscarora Indian Nation*, 362 U.S. at 116.

In response, Waggerby points to dicta from seemingly contradictory Supreme Court precedents. For instance, he cites *Crow Dog*, 109 U.S. at 572, in which the Court purported to require a "clear expression of the intention of [C]ongress" to confer federal jurisdiction over Indian-on-Indian crimes. Similarly, he points to *United States v. Quiver*, which states, "the enumeration . . . of certain offenses [in what has now become the Major Crimes Act] as applicable to Indians in the reservations, carries with it some implication of a purpose to exclude others." 241 U.S. 602, 606 (1916). Finally, he relies on *United States v. Antelope*, which states that "[e]xcept for the offenses enumerated in the Major Crimes Act, all crimes committed by enrolled Indians against other Indians within

Indian country are subject to the jurisdiction of tribal courts." 430 U.S. 641, 643 n.2 (1977).

None of these precedents change our analysis. In each precedent, the language in question relates to the kind of state criminal laws or federal enclave laws that Congress has extended to Indian country. *Crow Dog*, for one, dealt with the murder of an Indian by another Indian prior to the passage of the Major Crimes Act. 109 U.S. at 572. *Quiver* dealt with a prosecution for adultery under the updated Edmunds-Tucker Act, which prohibited polygamy and adultery exclusively in the territories. 241 U.S. at 602; *see also Wadena*, 152 F.3d at 842 n.18. Likewise, *Antelope* concerned a prosecution for felony murder under the federal enclave statutes. 430 U.S. at 641. Because none of these precedents say anything about federal crimes of general applicability, they do not affect our analysis of *Wheeler*, 435 U.S. at 330 n.30, and *Tuscarora Indian Nation*, 362 U.S. at 116.

Third, we reject Waggerby's argument that our reading undermines tribal sovereignty. Even if we could disregard statutory language based on notions of tribal sovereignty, we cannot see how we would undermine tribal sovereignty by extending generally applicable federal criminal laws to Indian country. It is undisputed that "[t]he United States is an indivisible 'Union of sovereign States.'" *Arizona v. United States*, 567 U.S. 387, 416 (2012) (Scalia, J., concurring in part and dissenting in part) (quoting *Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 104 (1938)). Yet it is uncontroversial that the United States can enforce federal law

within the sovereign states. *See Heath v. Alabama*, 474 U.S. 82, 87–89 (1985) (both federal and state governments may prosecute the same act). *See also Denezpi v. United States*, 596 U.S. 591, 598 (2022) (both federal government and tribes may prosecute same act). The power of the federal government to enforce its criminal law within tribal territory no more undermines tribal sovereignty than the federal government's power to enforce its own law in the states undermines state sovereignty.

We hold, then, that generally applicable federal laws extend to the acts of Indians committed in Indian country, even if the victim is also an Indian. Contrary to Waggerby's arguments, nothing in the Major Crimes Act limits federal jurisdiction to only the crimes it enumerates. Rather, the Major Crimes Act functions as an exception to the Indian Country Crimes Act's exception for Indian-on-Indian crime. The Major Crimes Act has nothing to say about criminal statutes that apply by their own terms to everyone, everywhere, such as the Hobbs Act.

### B.

We now turn to Brice's argument that the district court committed reversible error by admitting evidence of Brice's prior convictions. Though we agree that the district court erred in failing to perform an on-the-record balancing before admitting this evidence, that error was harmless.

We review the district court's decision to admit evidence of prior convictions for abuse of discretion. *United States v. Pritchard*, 973 F.2d 905, 908 (11th Cir. 1992). But, even when the district court

abuses its discretion, we will not reverse an erroneous evidentiary ruling if that error was harmless. *United States v. Augustin*, 661 F.3d 1105, 1123 (11th Cir. 2011). And when evidence of prior convictions has been erroneously entered, the "error is harmless . . . if the [g]overnment's case was strong enough to support a conviction even apart" from the challenged evidence. *United States v. Burston*, 159 F.3d 1328, 1336 (11th Cir. 1998).

Under our precedents, prior to admitting evidence of previous convictions, the district court is required to "make an on-the-record finding that the probative value of [admission] outweighs its prejudicial effect[.]" *United States v. Preston*, 608 F.2d 626, 639 (5th Cir. 1979). This finding "is not merely an idle gesture" because it ensures that the district court "has at least taken into account the relevant considerations." *Id*. In other words, the district court must take this requirement for an on the record finding seriously.

But the district court here made no such finding, and the government concedes as much. The government argues, however, that this error was harmless and, as a result, that Brice is not entitled to relief. The government contends that, based on the record, its "case was strong enough to support a conviction" even without the erroneously admitted evidence. *Burston*, 159 F.3d at 1336.

We agree with the government that this error was harmless. In the recorded conversation with Auther that the government entered at trial, Brice placed himself at the robbery and provided details concerning the event. He also described the type of firearm used in the robbery, which ballistics evidence entered at trial

corroborated. And cell site evidence placed Brice at the scene of the crime. Together, this evidence is strong enough to support a conviction even without evidence of Brice's prior convictions.

### III.

For the foregoing reasons, we **AFFIRM** Waggerby's, Brice's, and Holder's convictions.